UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14388-CIV-MARTINEZ/MAYNARD

REGAL NAILS, SALON & SPA, LLC,

    Plaintiff,

v.

HOANG MINH T HA,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me following the reinstatement of default against Defendant and a subsequent order of reference from U.S. District Judge Jose E. Martinez for me to determine the amount of damages that should be awarded to Plaintiff. DE 45. Plaintiff seeks a total damages award of $207,640.54 (comprised of $156,900.99 in actual damages, $49,547.50 in attorney's fees, and $1,192.05 in costs). DE 43 at 6. Defendant has not timely filed a response in opposition to this requested amount of damages.

Having held an evidentiary hearing on August 24, 2021 and having also reviewed the record, I recommend that Plaintiff be awarded a total damages award of **$195,508.67** (comprised of $156,900.99 in actual damages, $37,415.63 in attorney's fees, and $1,192.05 in costs) for the reasons set forth more fully below.

## FACTUAL BACKGROUND

This case stems from Defendant Hoang Minh T. Ha's breach of contract related to the franchising and operation of a nail salon in Port St. Lucie Florida. *See generally* DE 1. Plaintiff Regal Nails operates and franchises nail salons throughout the United States. *Id.* at ¶ 4. According

to the Complaint, Defendant entered into a franchise and sublease agreement (the "Franchise Agreement") with Plaintiff on April 24, 2019 to operate a nail salon in Port St. Lucie, Florida, as a franchised Regal Nails Salon and Spa. *Id.* at ¶¶ 11–12. Defendant also entered into an agreement to lease the Port St. Lucie salon premises from Plaintiff pursuant to a "Sublease Schedule to Franchise Agreement" (the "Sublease"). *Id.* at ¶ 13.

Plaintiff alleges that "Defendant defaulted under the Franchise Agreement and Sublease by failing to make the payments due to Regal Nails under the terms of those agreements, and by failing to maintain an ACH account." *Id.* at ¶ 20. In a letter dated June 23, 2020, Plaintiff notified Defendant of the defaults and demanded he cure them within fourteen (14) days of receipt of the letter. *Id.* at ¶ 21. Defendant failed to cure the defaults, abandoned the salon premises, and has failed to operate the salon since July 6, 2020. *Id.* at ¶¶ 22–23. Plaintiff sent Defendant a letter dated July 31, 2020, terminating the Franchise Agreement and Sublease due to Defendant's abandonment of the salon and failure to cure the defaults. *Id.* at ¶ 24.

On November 2, 2020, Regal Nails filed its Complaint against Defendant, asserting two claims for relief related to Defendant's breach of the Franchise Agreement and Sublease. DE 1. On November 16, 2020, a copy of the Summons and Complaint were served. DE 6. Federal Rule of Civil Procedure 12(a)(1)(A)(i) requires a defendant to respond to a complaint within 21 days of the date of service. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Thus, Defendant's response to the Complaint was due on December 7, 2020. After Defendant failed to respond, on December 10, 2020, Plaintiff moved for entry of default. DE 7. The same day, the Clerk of Court entered a default against Defendant. DE 8.

On January 11, 2021, Plaintiff filed its first motion for entry of default judgment plus attorneys' fees and costs against Defendant under Federal Rule of Civil Procedure 55(b). DE 13.

In support, Plaintiff submitted sworn Declarations by David Anderson (Plaintiff's Chief Financial Officer) and Nina Greene (one of Plaintiff's attorneys of record), as well as a non-military affidavit. DE 11, 12, 14. On June 23, 2021, after reviewing the first motion for default judgment, I issued an Order noting certain discrepancies and missing information pertaining to the amount of damages sought. DE 16. I thus ordered Plaintiff to file a notice with supporting documentation to address the noted deficiencies. *Id.*

On June 28, 2021, Plaintiff filed a supplemental declaration with additional documents in support of its first motion. DE 17, 18. I then set an evidentiary hearing for July 8, 2021. DE 19. Defendant appeared at this scheduled hearing proceeding *pro se*; however, due to a language barrier, I continued the hearing to August 24, 2021, so that a Vietnamese interpreter could be present to translate. DE 21, 23. It was determined at that first hearing that Defendant's contact information needed to be updated and I ordered the Clerk of Court to update Defendant's information accordingly. DE 22. In addition, upon my request, Plaintiff voluntarily agreed to pay the Vietnamese language interpreter fee of $250.00. DE 24, 25.

On August 24, 2021, I held an evidentiary hearing on the Plaintiff's first motion for default judgment. DE 27. Defendant appeared *pro se* and a Vietnamese interpreter was present. *Id.* At the evidentiary hearing, Defendant represented that he wanted to defend himself in this action, which I construed as an *ore tenus* motion to set aside the Clerk's default. DE 33, at 1 n.1. I also heard the sworn testimony of declarant David Anderson (Plaintiff's Chief Financial Officer) and Van Lam (Plaintiff's general counsel) regarding the issue of damages that should be awarded to Plaintiff if a default judgment were entered in Plaintiff's favor. DE 28 at 25-49.

On September 24, 2021, per my recommendation, presiding U.S. District Judge Jose Martinez granted Defendant's *ore tenus* motion, set aside the Clerk's default against him, and

denied Plaintiff's motion for default judgment. DE 36. Defendant was ordered to answer the complaint by no later than October 25, 2021. *Id.* at 4. Defendant was expressly warned that if he failed to respond to the Complaint, the Court would reconsider its decision to enter default judgment in Plaintiff's favor. *Id.* Defendant did not timely respond to the complaint or otherwise take any action to defend himself.

On October 27, 2021, Plaintiff filed a motion to reinstate default and for entry of final default judgment against Defendant. DE 43. Based on Defendant's failure to respond or otherwise continue to participate in this action, Plaintiff requested a final judgment in its favor and against Defendant "in the amount of $156,900.99 dollars, plus attorney's fees in the amount of $49,547.50, and costs in the amount of $1,192.05, for a total judgment of $207,640.54." DE 43 at 6. In support of this damages request, Plaintiff incorporates by reference its prior filings filed in support of its damages sought as well as an Amended Declaration of attorney Nina Greene. DE 42. Defendant has not timely responded to this most recent motion.

On December 10, 2021, Judge Martinez granted Plaintiff's motion to reinstate default, reinstated the Clerk's Default against Defendant, closed this case, stated that final default judgment would be issued by separate order, and referred the matter to me for a determination of Plaintiff's damages. DE 45 at 2-3.

## DISCUSSION

Federal Rule of Civil Procedure 55 sets forth a two-step process for obtaining default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court is authorized to enter a clerk's default. Second, after entry of the clerk's default, the court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent person. Fed. R. Civ. P. 55(b)(2). Here, default has been reinstated against Defendant.

However, this does not end the inquiry, because "[a] court may not enter a final default judgment based solely on the existence of a clerk's default." *Redwood Mgmt., LLC v. Cavu Res., Inc.,* No. 13-CV-24693, 2014 WL 12863134, at *1, 5 (S.D. Fla. July 10, 2014). Instead, "a court must examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to a default judgment." *Gonopolsky v. Korchak*, No. 6:06-CV-1857, 2007 WL 3333482, at *1 (M.D. Fla. Nov. 8, 2007).

"The effect of a default judgment is that the defendant admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by entry by the judgment, and is barred from contesting on appeal the facts thus established." *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). "While a complaint … does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A default judgment cannot stand on a complaint that fails to state a claim." *GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002).

"[T]he court must determine whether the well-pleaded allegations in the complaint deemed admitted by Defendants are sufficient to establish both Defendants' liability and the amount of damages such that Plaintiff's motion for default judgment must be granted." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, No. 04-cv-01015-JOF, *8-9 (N.D. Ga. Feb. 25, 2008).

An evidentiary hearing is *not* a pre-requisite to a default judgment. "An evidentiary hearing on the appropriate amount of damages is not required by Rule 55, and it is within the court's discretion to choose whether such a hearing should take place. Fed. R. Civ. P. 55(a)." *Fernandez de Cordoba v. Flores*, No. 17-20122-CV, 2018 WL 1830805, at *2 (S.D. Fla. Jan. 10, 2018*), report*

*and recommendation adopted sub nom.*, *Fernandez de Cordoba*, 2018 WL 1811945 at *5 (S.D. Fla. Feb. 9, 2018). Holding an evidentiary hearing for a default judgment is governed by Federal Rule of Civil Procedure 55, which states in pertinent part:

> The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Fed. R. Civ. P. 55(b).

Below, I will briefly discuss Defendant's liability to Plaintiff for purposes of entering final default judgment and then turn to the referred matter of damages.

**A.       Liability – Breach of Contract**

> "The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach… In addition, in order to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance."

*Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (internal citations omitted). To establish a claim for breach of contract, Regal Nails must show that: (1) there was a valid contract; (2) that there was a material breach of that contract; and (3) that it sustained damages as a result of that breach. *See Redwood*, 2014 WL 12863134, at *1–2; *Rollins*, 951 So. 2d at 876.

Here, Plaintiff asserts that Defendant breached an enforceable contract (the Franchise Agreement) with Plaintiff whereby Defendant agreed to pay Plaintiff a $2,561.64 monthly franchise fee, inclusive of base rent and rental tax for the premises. DE 11 at 63. Plaintiff has stated a well-pleaded claim for breach of contract and has provided affidavits sufficiently detailing each requisite element of that claim. Plaintiff had a valid contract with Defendant as evidenced by the written Franchise Agreement signed by both parties. DE 11 at 65. Plaintiff has shown that Defendant breached his contract by providing a record of Plaintiff's invoices and letters to

Defendant regarding material breach of the Franchise Agreement. DE 11 at 99–109. Finally, Plaintiff has shown that Defendant's breach caused Plaintiff to incur damages, primarily relying on a liquidated damages clause in the Franchise Agreement, which establishes a protocol by which the parties would estimate monetary damages in the event of breach. DE 11 at 59. Thus, Plaintiff provides facts sufficient to establish the requirements necessary to prevail on its breach of contract claim.

**B. Damages**

"If the admitted facts are sufficient to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount." *Fernandez de Cordoba*, 2018 WL 1811945 at *5 (S.D. Fla. Feb. 9, 2018). "Damages may be awarded only if the record adequately reflects the basis for the award, which can be shown with submission of detailed affidavits establishing the facts necessary to support entitlement to the damages requested." *Id.* "In issuing a default judgment, a court may award damages without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation, as long as all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1231, 1232 n.13 (11th Cir. 2005). "Damages are liquidated when the proper amount to be awarded can be determined with exactness from the cause of action as pleaded, i.e., from a pleaded agreement between the parties, by an arithmetical calculation or by application of definite rules of law." *Bowman,* 432 So. 2d at 662. Damages are unliquidated if testimony is required to ascertain facts upon which to base a value judgment of the exact sum. *Id.* at 663. Costs of collection and attorney's fees are normally unliquidated. *Id.*

Here, Plaintiff seeks $156,900.99 in actual damages. Plaintiff calculates this amount as follows:

| | |
|---|---:|
| Liquidated Damages | $102,245.19 |
| Monthly Fees | $5,223.28 |
| White Box Fee | $25,000.00 |
| Prorated Insurance Premium | $928.24 |
| Indemnification Amount | $23,504.28 |
| Total | $156,900.99 |

DE 18 at 8.

First, I recommend awarding $102,245.19 for the cost of liquidated damages for early termination under the Franchise Agreement. DE 11 at 61. Plaintiff Regal Nails offers a Supplemental Declaration by Van Lam, Esq. detailing Plaintiff's mathematical calculations of its liquidated damages pursuant to the Franchise Agreement, which amount to $102,245.19. DE 18 at 7. Plaintiff calculates the sum of $102,245.19 using the method set forth in ¶38B of the Franchise Agreement. DE 11 at 61. In other words, Plaintiff calculates the "the total of the monthly franchise fees due through the remainder of the term; plus the total of the monthly utility charges and/or CAM due through the remainder of the term; and discounted to present value using the then-current prime rate of interest quoted by Regal Nails' principal commercial bank." *Id*. Using this method, the Court agrees that the amount of liquidated damages is $102,245.19. *Id*.[1] Since this amount may be mathematically calculated, this Court finds that a hearing on the amount of liquidated damages is unnecessary. *See Smyth*, 420 F.3d at 1232.

Second, I recommend awarding $25,000 for the cost of "White Box" damages pursuant to ¶ 38A.3 of the Franchise Agreement, whereby Defendant was required to pay Plaintiff $25,000 if Defendant failed to leave the vacated salon premises in "broom clean" or "white box" condition. DE 11 at 60. At the evidentiary hearing on August 24, 2021, Plaintiff's general counsel, Mr. Van

---

[1] Initially, Plaintiff calculated the amount of liquidated damages as $108,388.23. DE 11 at 6. My calculations were different from this amount, so I instructed the Plaintiff to file a supplemental notice explaining the variance. DE 16. Plaintiff filed the supplemental notice as instructed and amended its calculation to $102,245.19, which accords with my calculation. DE 18 at 5-8.

Lam, testified about the "White Box" provision of the Franchise Agreement which obligated Defendant to return the leased space "in a vanilla shell, including but not limited to removal of unwanted improvements, the capping and placement of pipes and plumbing into drywall, drywall repair, painting and removal of custom flooring and replacement with landlord's desired flooring." DE 28 at 35. According to Mr. Van Lam, this provision is included in the Franchise Agreement because Plaintiff's master lease agreement with Walmart obligates Plaintiff to pay $25,000 to Walmart if the space is not returned in white box condition. *Id.* Mr. Van Lam testified that Defendant did not leave the leased space in white box condition as evidenced by photographs that were introduced into evidence at the hearing. *Id.*; DE 26-3. This evidence by Plaintiff satisfactorily establishes that the premises were not left "broom clean" or in "White Box" condition as contemplated by the Franchise Agreement when Defendant abandoned the premises. Thus, I recommend that Plaintiff's request for "White Box" damages be granted.

Third, I recommend awarding $23,504.28 for the cost of indemnification of amounts owed to Wal-Mart for Defendant's early termination. Plaintiff asserts that under the agreements at issue, Defendant was required to indemnify Plaintiff from expenses incurred in connection with Plaintiff's sublease of the salon property to Defendant. DE 13 at 4. Plaintiff states that the indemnification amount owed as a result of the early termination is $23,504.28. DE 11 at 7. Plaintiff refers to indemnity in clause 24 (A) and includes Wal-Mart in the list of indemnities in clause 24 (F). DE 11 at 44. In support of this claim for indemnity damages, Plaintiff provides the letter from Wal-Mart specifying the monetary settlement amount owed to Wal-Mart as a result of Defendant's early termination. DE 18 at 10. Thus, the record adequately reflects the basis for an award of $23,504.28 for indemnification.

Fourth, I recommend awarding $928.24 for the cost of Prorated Insurance Premium damages owed to Plaintiff pursuant to the Franchise Agreement. DE 11 at 19. Plaintiff provides adequate support for this specific liquated amount in "Exhibit B" of its Declaration of David M. Anderson. DE 11 at 99–102. Thus, the record adequately reflects the basis for the award of $928.24 for the cost of Prorated Insurance Premium damages.

Fifth and finally, I recommend awarding $5,223.28 for the cost of "Monthly Fees." DE 18 at 8. Plaintiff's CFO, Mr. David Anderson, testified at the evidentiary hearing about the basis for these monthly fees. Mr. Anderson explained that Defendant was billed rent and franchise fees on a monthly basis. DE 28 at 43. The requested amount of $5,223.28 represents two months worth of unpaid monthly fees for June and July 2020. Mr. Anderson's testimony was supported by the presentation of invoices establishing the monthly fees owed ($2,561.64 monthly fee + $50 monthly charge for insufficient funds = $2,611.64 x 2 months = $5,223.28). The record thus adequately reflects the basis for awarding this requested amount.

Based on the foregoing, I find that Plaintiff is entitled to a total award of $156,900.99 in actual damages.

## C. Attorney's Fees

In addition to actual damages, Plaintiff seeks to recover its attorney's fees expended in this litigation. The Franchise Agreement provides that Defendant shall pay all costs, expenses, and attorneys' fees in any litigation brought by Regal Nails to enforce or collect upon the Franchise Agreement. DE 11, Ex. A at ¶ 43. In its first motion for final default judgment filed on January 11, 2021, Plaintiff requested fees of $9,269.50 for 30.70 hours of time billed by attorneys and paralegals at various rates. DE 13 at 5. In its renewed motion, filed October 27, 2021, Plaintiff

seeks an increased amount of $49,547.50 in attorney's fees for 137.80 hours of time billed by attorneys and paralegals at various rates. DE 43 at 6.

Attorney's fees are not considered liquidated,[2] and so courts in this district require plaintiffs seeking attorney's fees, paralegal's fees, and costs to delineate:

> (1) the identity, experience, and qualifications for each timekeeper for whom fees are sought; (2) the number of hours reasonably expended by each such timekeeper; (3) an itemized description of the tasks done during those hours; and (4) the hourly rate(s) claimed for each timekeeper. *See* S.D. Fla. L.R. 7.3(a). Plaintiff should also properly describe and document with itemized invoices all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920. *See* S.D. Fla. L.R. 7.3(a)."

*Garcia v. Client Resol. Mgmt., LLC*, No. 20-20713-Civ-Bloom, 2020 WL 2732345, at *5 (S.D. Fla. May 26, 2020).

The Southern District of Florida is wary of imposing unnecessary attorney's fees on defaulting defendants. In *Sream, Inc. v. Habsa Enterprise., Inc.,* the district court held that courts will not allow plaintiffs to recover compensation for redundant efforts on the part of their attorneys:

> The fee applicant bears the burden of establishing that the time for which they seek compensation was reasonably expended. […] "If the party moving for the fees fails to exercise required billing judgment, the Court is obligated to do so by reducing the number of hours and 'pruning out those that are excessive, redundant or otherwise unnecessary.

*Sream, Inc. v. Habsa Enter., Inc.*, No. 16-81662-Civ-Dimitrouleas/Snow, 2018 WL 3413041, at *1 (S.D. Fla. May 16, 2018), *report and recommendation denying attorney's fees adopted,* No. 16-81662-Civ-Dimitrouleas/Snow, 2018 WL 3413024 (S.D. Fla. May 31, 2018).

The district court in *Sream* held that in a parallel case where plaintiff's counsel represented the same party and made requests for attorney's fees for the same work product produced in the

---

[2] *Bowman,* 432 So. 2d at 663("Costs of collection and attorney's fees are normally unliquidated.").

nearly identical case, the court would *not* allow the plaintiff to seek duplicate attorney's fees for work that was clearly only done once.

> The Court observes that in a companion case, *Sream, Inc. v. Habsa Enterprise, Inc.*, Case No. 16-81662, the same Plaintiff's counsel, representing the same party, made an identical request for 4.2 hours of time to attend mediation scheduled on the same date (January 25, 2018). The billed-for time to attend the mediation should not have been sought repetitively. For example, counsel is not entitled to recover a total of six hours of fees when he spent three hours driving to and from the mediation, billed in the instant case, which presumably were the same three hours he billed for the same conduct in the companion case (compare ECF No. 78-1 in the instant case with ECF No. 80-1 in Case No. 16-81660).

*Id.*

> Even if a portion of Plaintiff's counsel's work to prepare for the mediation was unique as to the two separate cases, it is clear that the majority of the work was done only once and counsel effectively has sought to be paid double for his work—which this Court will not approve.

*Id.*

A parallel case **nearly identical** to this instant case mirrors the cause of action currently before this court: both share the same Plaintiff (Regal Nails); Plaintiff's same counsel (Joyce A. Delgado, Nina Greene, and Jessica S. Erenbaum); the same cause of action; the same breach of the same Franchise Agreement; and similar default judgment proceedings. *See Regal Nails, Salon & Spa, LLC v. Kinh Nguyen,* Case No. 9:20-cv-82006-AMC (S.D. Fla. 2021). Much of the same legal language (including phrasing and formatting) is copied verbatim in parallel case filings including the initial complaints, declarations, and billing statements for attorney's fees. In the doppelganger case, Plaintiff requested $12,515.50 for 30.70 hours of time billed by attorneys and paralegals at various rates. DE 18 at 5. That amount is only seven hours' worth of work more than Plaintiff initially sought in its first motion for default judgment in this case. *Compare* Case No. 2:20-cv-14388-JEM DE 12 (01/11/2021) *with* Case No. 9:20-cv-82006-AMC DE 18 (01/11/2021). Here, Plaintiff initially sought an award of $9,269.50 in attorney's fees for 30.70

hours of time billed. DE 13 at 5. The work-product itself appears extensively duplicative of the same work product; Regal Nails has requested duplicate fees based on efforts largely expended only once. *Compare* Case No. 2:20-cv-14388-JEM DE 11 *with* Case No. 9:20-cv-82006-AMC DE 17.

Now, Plaintiff seeks $49,547.50 in attorney's fees and supports this increased fee request with an amended declaration of counsel of record, Nina Greene, Esq. Notably, this increased fee amount is over five times the initial amount sought. Plaintiff asserts that this increase in attorney's fees is the result of having to "attend the two evidentiary hearings and researching and preparing multiple supplemental briefs and filings required by the Defendant's purported *ore tenus* motion to set aside the Clerk's Default." DE 43 at 4. While I agree that the unique course of this case following Plaintiff's first motion for default judgment necessitated the expenditure of additional attorney time and resources, I cannot agree that the additional attorney's fees sought by Plaintiff qualify as reasonable. While Plaintiff has a right to recover attorney's fees incurred, I have a corresponding duty to ensure that such an award is reasonable.

As discussed above, I find that some of the work performed by Plaintiff's attorneys earlier in this case is duplicative of work performed in another virtually identical case. The Court further finds that the total number of hours claimed is unreasonably high. As one notable example, there is an entry from September 2, 2021 in which Plaintiff's counsel charged $2,850.00 for six hours of law firm partner Nina Greene's time spent on emails and review of a transcript. DE 42-1 at 23. As the most experienced attorney who charges the highest rate, I find this excessive. In addition, I find it unreasonable that Plaintiff had two attorneys expending a similar amount of billable time on this matter. Attorneys Nina Greene and Joyce Delgado spent the lion's share of attorney time working on this case. Attorney Nina Greene billed for a total of 64.6 hours while attorney Joyce

Delgado billed for a total of 63.6 hours. While "[t]here is nothing inherently unreasonable about a client relying on more than one lawyer or having an attorney review and revise his or her colleague's work[,] ... a fee applicant bears the burden of establishing that billed time reflects distinct contributions by each lawyer." *People for Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc*., No. 8:16-cv-2899, 2018 WL 1605842, at *3 (M.D. Fla. Apr. 3, 2018). Here, Plaintiff fails to establish that the time spent by these two attorneys reflect distinct contributions of each attorney and a review of the invoices suggests that these two attorneys duplicated at least some efforts working on this matter. Having concluded that the total number of hours claimed is unreasonably high, I have two choices: conduct an hour-by-hour analysis or reduce the requested hours with an across-the-board cut. *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) ("When a district court finds the number of hours claimed is unreasonably high, the court has two choices; it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."); *Freestream Aircraft USA Ltd. v. Chowdry*, No. 16-CV-81232, 2017 WL 4785458, at *1 (S.D. Fla. Oct. 20, 2017). Employing the latter option, I find that a 25% reduction for the attorney's time is warranted here. Thus, I find that 48.45 hours for attorney Greene, 1.575 hours for attorney Erenbaum, 47.7 hours for attorney Delgado, and .075 hours for attorney McIntosh is fair and reasonable under the circumstances. This represents an overall cut of 32.6 of the 130.4 claimed hours of attorney time spent working on this case.

I turn next to the reasonableness of the hourly rates sought. In support of the claimed hourly rates, the declaration of attorney Greene avers that her hourly rate is $475.00. DE 42 at 2. Attorney Greene is a law firm partner with 31 years of experience. *Id.* Attorney Greene avers that attorney Erenbaum's hourly rate is $400.00 and that this attorney has 38 years of experience

practicing law. *Id.* Attorney Delgado is an associate with four years of experience and her hourly rate is $265.00. *Id.* Finally, attorney McIntosh's hourly rate is $285.00. *Id.* Attorney Greene further avers that her law firm charges $150.00 for paralegal work. Based on my own experience and knowledge of prevailing market rates for similar services in the South Florida legal community as well as my review of the attorneys' experience and qualifications, I find the requested hourly rates sought by Plaintiff to be reasonable.

In order to calculate the appropriate fee award, I multiply the reasonable rates of the attorneys and paralegals by the number of reasonable hours spent in connection with this matter. I find that Plaintiff reasonably incurred 97.8 hours of attorney work and 7.4 hours of paralegal work. I find that Plaintiff should thus be awarded a total $37,415.63 in attorney's fees calculated as follows:

| **Attorney/Paralegal** | **Total Hours x Hourly Rate** | **Total** |
|---|---|---|
| Nina Greene, Esq. | 48.45 x $475.00 | $23,013.75 |
| Jessica Erenbaum, Esq. | 1.575 x $400.00 | $630.00 |
| Joyce A. Delgado, Esq. | 47.7 x $265.00 | $12,640.50 |
| Elizabeth McIntosh, Esq. | .075 x $285.00 | $21.38 |
| Two Paralegals | 7.4 x $150.00 | $1,110.00 |
|  | **Total:** | **$37,415.63** |

**D. Costs**

In addition to its fee request, Plaintiff seeks $1,192.05 in costs. The Franchise Agreement provides that Defendant shall pay all costs, expenses, and attorneys' fees in any litigation brought by Regal Nails to enforce or collect upon the Franchise Agreement. DE 11, Ex. A at ¶ 43. In addition, an entry of default judgment establishes Plaintiff as the prevailing party and Plaintiff is

thus entitled to recover costs under 28 U.S.C. § 1920.  *Maersk Line A/S v. Rapid Tow, LLC*, No. 19-23585-CIV-Williams/Torres, 2019 WL 11506029, at *3 (S.D. Fla. Dec. 13, 2019), *report and recommendation adopted*, 2020 WL 7492336 (S.D. Fla. Jan. 8, 2020) (citations omitted).  These costs may include any of the following:

> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained for use in case;
> (5) Docket fees under § 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under § 1828 of this title.

28 U.S.C. § 1920.

Here, Plaintiff seeks to recover (1) $400.00 for the filing fee; (2) $180.00 in service of process fees; (3) $250.00 for the Vietnamese language interpreter; (4) $324.00 fo the transcription of the August 24, 2021 evidentiary hearing; (5) $20.60 in FedEx charges for mailing copies of the filings to Defendant; and (6) $17.45 in postage costs.  These costs are recoverable under §1920. Plaintiff has submitted a supporting affidavit evidence, receipts, and invoices in support of its request for costs.  DE 42 at 3, DE 42-2.  Given the unrebutted evidence establishing the amount of recoverable costs, I recommend that Plaintiff be awarded $1,192.05 in costs.

## CONCLUSION

Consistent with the foregoing, I repsectfully **RECOMMEND** to the District Court that a final default judgment be entered in Plaintiff's favor and that Plaintiff be **AWARDED** a total damages amount of **$195,508.67** (comprised of $156,900.99 in actual damages, plus $37,415.63 in attorney's fees, plus $1,192.05 in costs).

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Jose E. Martinez. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016). Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 4th day of January, 2022.

_____
SHANIEK M. MAYNARD
U.S. MAGISTRATE JUDGE